1  RAQUEL M. BUSANI, No.: 323162
   raquel@erisalg.com
2  ROBERT J. ROSATI, No.: 112006
   robert@erisalg.com
3  6485 N. Palm Ave., Ste. 105
   Fresno, California 93704
4  Telephone: 559-478-4119
   Facsimile: 559-478-5939
5
   Attorneys for Plaintiff,
6  DEBORAH JONES

7

8
                    **UNITED STATES DISTRICT COURT**
9
                    **EASTERN DISTRICT OF CALIFORNIA**
10
                         **SACRAMENTO DIVISION**
11

12  DEBORAH JONES,                    )      Case No.:
                                      )
13                    Plaintiff,      )
                                      )      **COMPLAINT**
14  v.                                )
                                      )
15  UNUM LIFE INSURANCE COMPANY       )
    OF AMERICA,                       )
16                                    )
17                    Defendant.      )
                                      )
18  _____   )

19

20
        Plaintiff, DEBORAH JONES ("Plaintiff" or "Jones") alleges as follows:
21
                              **JURISDICTION**
22
        1.      Plaintiff's claim for relief arises under the Employee Retirement Income Security
23
    Act of 1974, as amended ("ERISA"), 29 U.S.C. section 1132(a)(1) and (a)(3).  Pursuant to 29
24
    U.S.C. section 1331, this court has jurisdiction over this action because this action arises under
25
    the laws of the United States of America.  29 U.S.C. section 1132(e)(1) provides for federal
26
    district court jurisdiction of this action.
27  ///
28  ///

**VENUE**

2.     Venue is proper in the Eastern District of California because Plaintiff was and is a resident of the City of Oroville, in the County of Butte, California, when Defendant terminated her long term disability benefits and denied her appeal of that decision.  Therefore, 29 U.S.C. section 1132(e)(2) provides for venue in this Court.  Intradistrict venue is proper in this Court's Sacramento Division.

**PARTIES**

3.     Plaintiff  is, and at all times relevant hereto was, a participant, as that term is defined by 29 U.S.C. section 1000(7), of the Orohealth Corporation Group Long Term Disability Plan ("The Plan") and thereby entitled to receive benefits therefrom.  Plaintiff was a beneficiary because she was an employee of Orohealth Corporation, which established The Plan.

4.     The Plan is an employee welfare benefit plan organized and operating under the provisions of ERISA, 29 U.S.C. section 1001 et seq.

5.     Defendant Unum Life Insurance Company of America, ("Unum"),  issued Policy No.: 148451 012 to Orohealth Corporation ("The Policy") under which benefits are provided by The Plan, was insurer and decision maker for The Plan, and is legally liable for providing the benefits sought herein.

**CLAIM FOR RELIEF**

6.     The Policy provides long-term disability ("LTD") benefits, wherein such benefits potentially could continue until claimant reaches the age of 65.

7.     In order to be eligible for benefits under the Policy, an employee must meet the Policy's definition of disability.

8.     The Policy includes the following definitions:

A.     "Disability" means Total Disability or partial disability due to sickness or injury.

B.     Total disability is defined as:

"For the first 27 months, **you** are **totally disabled** when, as a result of **sickness** or **injury, you** are unable to perform with reasonable continuity the **substantial and material acts** necessary to pursue

your **usual occupation** in the usual and customary way.

After benefits have been paid for 24 months of **disability you** are **totally disabled** when, as a result of **sickness** or **injury, you** are not able to engage with reasonable continuity in any occupation in which **you** could reasonably be expected to perform satisfactorily in light of your age, education, training, experience, station in life, and physical and mental capacity."

C.      Regular care is defined as:

"-      **you** personally visit a **physician** as frequently as is medically required, to effectively manage and tret your disability condition(s); and
-       **you** are receiving appropriate medical treatment and care for your disabling condition(s), which conforms with generally accepted medical standards."

D.      Substantial and material acts are defined as:

"The important tasks, functions and operations generally required by employers from those engaged in your **usual occupation** that cannot be reasonably omitted or modified."

In determining what **substantial and material acts** are necessary to pursue your **usual occupation**, **we** will first look at the specific duties required by your **Employer**.  If **you** are unable to perform one or more of these duties with reasonable continuity, **we** will then determine whether those duties are customarily required of other individuals engaged in your **usual occupation**.  If any specific material duties required of **you** by your **Employer** differ from the material duties customarily required of other individuals engaged in your **usual occupation**, then we will not consider those duties in determining what **substantial and material acts** are necessary to pursue your **usual occupation.**"

E.      Usual occupation is defined as:

"The **substantial and material acts you** are routinely performing for your **Employer** when your **disability** begins."

F.      Mental Disorder is defined as:

"A psychiatric or psychological condition classified in the Diagnostic and Statistical Manual of Mental Health Disorders (DSM), published by the American Psychiatric Association, most current as of the start of a **disability**.  Such disorders include, but are not limited to, psychotic, emotional or behavioral disorders.  If the DSM is discontinued or replaced, these disorders will be those classified in the diagnostic manual then used by the American Psychiatric Association as of the start of a **disability**."

G.      Employer means the Policyholder, which is Orohealth Corporation

9.      The policy has the following limited benefit provision for mental disorders:

"Disabilities, due solely to **mental disorders** are limited to a maximum pay period of 24 months.

Unum will continue to send **you** payments beyond the 24 month period if **you** meet one or both of these conditions:

1.  If **you** are confined to a **hospital or institution** at the end of the 24 month period, Unum will continue to send **you** payments during your confinement.  If **you** are still disabled when **you** are discharged, Unum will send **you** payments for a recovery period of up to 90 days.  If **you** become reconfined at any time during the recovery period and remain confined for at least 14 days in a row, Unum will send payments during that additional confinement and for one additional recovery period up to 90 more days.

2.  In addition to Item 1, if, after the 24 months period for which **you** have received payments, **you** continue to be disabled and subsequently become confined to a **hospital or institution** for at least 14 days in a row, Unum will send payments during the length of the reconfinement.

Unum will not pay beyond the **mental disorder** limitation as indicated above, or the **maximum period of payment**, whichever occurs first.

Unum will not apply the **mental disorder** limitation to dementia if it is a result of:

-   Stroke;
-   trauma;
-   viral infection;
-   Alzheimer's disease; or
-   other conditions not listed which are not usually treated by a mental health provider or other qualified provider using psychotherapy, psychotropic drugs, or other similar methods of treatment."

10.   A.   The Policy definition regarding to the term "totally disabled" is ambiguous in many material respects.  First, certain incorporated definitions are circular: "<u>usual occupation</u>" is defined as "the <u>substantial and material acts</u> you are routinely performing for your employer when your disability begins" and <u>substantial and material acts</u> are defined as "the important tasks, functions, and operations generally required by employers from those engaged in your <u>usual occupation</u> that cannot be reasonably omitted or modified."  Second, when evaluating what <u>substantial and material acts</u> are necessary to pursue the employee's <u>usual occupation</u> Unum "will first

1  look at the specific duties required by the employer and determine whether

2  those duties are customarily required of other individuals engaged in the

3  employee's <u>usual occupation</u>."

4  B.  Thus, since <u>usual occupation</u> is the <u>substantial and material acts</u> "you are

5  routinely performing" for the employer when your disability begins, those

6  <u>substantial and material acts</u> for Jones are those are those she did, as set

7  forth in paragraph 12.

8  C.  Due to the circular definition in The Policy, the duties of Jones' <u>usual</u>

9  <u>occupation</u> are also the <u>substantial and material acts</u> necessary to pursue

10  her <u>usual occupation</u>.  Specifically, since <u>usual occupation</u> means the

11  <u>substantial and material acts</u> Jones was performing when her disability

12  began, all of her duties are customarily required "of other individual

13  engaged in her "<u>usual occupation</u>," and thus all of Jones' duties, are

14  <u>substantial and material acts</u> necessary to pursue Jones' <u>usual occupation</u>.

15  D.  To the extent The Policy is ambiguous and it must be construed consistent

16  with Jones' reasonable expectations, i.e., that the <u>substantial and material</u>

17  <u>acts</u> of her <u>usual occupation</u> are the acts she was performing for her

18  employer, as set forth in paragraph 12.

19  E.  Finally, notwithstanding the express terms of The Policy, the concept of

20  total disability has an established meaning under California law which

21  Unum is required to implement and follow as described in Paragraph 11.

22  11.  A.  Under California law, insurance policies are governed by the statutory and

23  decisional law in force at the time the policy is issued.  Such provisions

24  are read into each policy thereunder, and become a part of the contract

25  with full binding effect on the parties.  This principle governs not only

26  new policies but also renewals: each renewal incorporates any changes in

27  the law that occurred prior to the renewal.

28  B.  Under California law, The Policy's definitions of "disabled," as alleged in

1    Paragraph 8 require Unum to consider: (a) whether Jones could reasonably

2    be expected to work; (b) recognizing the fact that she may do some work

3    or even the fact that she may be physically able to do so is not conclusive

4    evidence that her disability is not total, if reasonable care and prudence

5    require that she desist; (c) given her physical and/or mental capacity; (d) to

6    perform the "substantial and material" duties of her own occupation; (e)

7    with "reasonable continuity"; (f) in the usual and customary way.

8    Recovery is not precluded because Jones is able to perform sporadic tasks

9    or attend to simple, inconsequential details incident to the conduct of

10    business.  When evaluating a Jones' capacity to perform "any occupation"

11    the Unum must take into account the her age, education, experience,

12    training, and station in life.  Thus, an uneducated laborer cannot be

13    expected to become an accountant or banker and a doctor, lawyer, or

14    business executive is totally disabled even if he could run a news stand or

15    work as a day laborer.

16        12.    Jones was employed by Orohealth Corporation as a Corporate Compliance

17   Officer.  Jones explained in a declaration submitted with her appeal of the termination of her

18   LTD benefits:

19        "My occupation as a Corporate Compliance Officer entailed the following

20   responsibilities:

21            A.    Administrative Nurse- Oversees hospital compliance efforts;

22            B.    Oversee hospital compliance concerns to administration on regular basis.

23            C.    Wrote policies and procedures to comply with Centers for Medicare and

24                 Medicaid Services ("CMS") regulations.

25            D.    Reviewed all policies, contracts agreements pertaining to hospital

26                 business.

27            E.    Administrative direction over all denials for payment regarding hospital

28                 services rendered to all patients.

F.     Direct oversight into any Office of the Inspector General ("OIG") request or audit.

G.     Wrote hundreds of appeals to obtain payment for hospital services to various entities on a monthly basis.

H.     Provided reports to administration regarding financial impact of charges and payment for services provided.

I.     Worked closely with Administrative staff regarding contracted services and all existing contracts and their compliance with regulatory and legal guidelines.

J.     Direct oversight to 40 plus employees working in case management, quality management, and utilization management.

K.     The physical aspects of the job included:

   i.     Walking up to two hours in a workday.

   ii.    Standing up to one hour in a workday.

   iii.   Sitting five hours in a workday.

   iv.    Writing, typing or handling small objects up to six hours in a workday.

   v.     Lifting and carrying office equipment such as laptop computers was done when I left and returned to work, when I went to meetings, and when I had to visit other work areas.

   vi.    I lifted up to 20 pounds occasionally and up to 10 pounds frequently.

L.     I frequently drove to different work sites for meetings."

13.     Jones is disabled by co-morbid effects of chest pain, hypertension, anxiety, sleep hypopnea, post-heart attack, myocardial infarction, obesity, PTSD, and other conditions.

14.     Jones' last day of work was May 2, 2017.

15.     Jones submitted her application for LTD benefits to Unum on or about August 9, 2017.

16.     By letter dated July 13, 2018, Unum approved Jones' claim for LTD benefits effective July 31, 2017, - - i.e., after completion of the 90 day elimination period in The Policy.

17.     By letter dated December 26, 2018, Unum terminated Jones' LTD benefits, and invited Jones to submit an appeal of that decision.

18.     By letter dated April 3, 2019, Jones, through counsel, appealed the termination of her LTD benefits.  Counsel's 92-page letter in part asserted:

        A.     Unum's termination of Jones's benefits violated the terms of The Policy;

        B.     Unum and its reviewing doctors were, in effect, re-writing the terms of The Policy by mischaracterizing and misapplying its terms;

        C.     Described Jones' medical conditions;

        D.     Described Jones' functional capacity;

        E.     Noted that Unum withheld pertinent documents;

        F.     Summarized Jones' medical records;

        G.     Asserted Unum failed to perform a whole person evaluation;

        H.     Evaluated and criticized Unum's medical reviews;

        I.     Criticized Unum's use of Dr. Stuart Shipko as a doctor to review Jones' records because Unum knew that Dr. Shipko is and was dishonest, unreliable, and unqualified to provide such reviews and opinions;

        J.     Unum failed to address Jones's treating physicians' opinions;

        K.     Unum failed to perform a proper occupational analysis;

        L.     Unum failed to have Jones examined;

        M.     Unum's review and appeal processes were unfair;

        N.     Unum incorrectly only considered objective medical evidence;

        O.     Jones was disabled under the terms of The Policy;

19.     As part of her appeal, Jones submitted a sworn declaration and explained, in part: that she is unable to perform her own or any occupation because:

        ". . . I cannot perform my own or any occupation because my job had a lot of responsibility and with that responsibility came

1   unbelievable amounts of stress. . . . It cause me to have panic

2   attacks, have poor and broken sleep, have nightmares, and chest

3   pain similar to the pain I experienced with a myocardial infarction.

4   Experiencing the chest pain cause more panic because I didn't and

5   don't know if the chest pain is being caused by a panic attack or if I

6   am indeed having another heart attack.  I was living in a constant

7   state of fear, both because I felt I was being told to act unethically

8   by the administrators and because I was afraid of another heart

9   attack."

10   20.   As part of its appeal review Unum obtained:

11   A.   A "Vocational Analysis, dated April 23, 2019, by Kelly B. Marsiano.  Therein,

12   Ms. Marsiano noted, in part:

13   "On appeal, the insured's representative states that the insured's
      job was not sedentary but reported by bot the insured and the

14   employer that it was performed within the light range of work.
      additionally, it is noted that VRC Marziali did not note the

15   requirement of travel as a protion of the hob duties.  Also, the
      employer's job description specifically mentions a physical

16   requirement of lifting note more than 20 pounds with a frequent
      lifting and/or carrying of objects weighing up to 10 pounds. . . .(¶)

17   Travel was performed by the insured for her employer, however, it
      is characteristic of the occupation to find the Director of

18   Compliance for a hospital working primarily within the facility.  It
      is unclear for what duties the insured would be required to travel."

19

20   B.   An "OSP Review" dated May 2, 2019, by Dr. Scott B. Norris.  Dr. Norris

21   expressed several opinions, concluding repeatedly (eight times) that Jones's

22   conditions, in his opinion, would not preclude sedentary level

23   activity/work/occupational activity.

24   C.   An "OSP Review" by Dr. Peter Brown dated May 21, 2019.  Dr, Brown was

25   asked to evaluate Jones' condition for the period beyond December 26, 2018.  Dr.

26   Brown opined, in part:

27   "From a psychiatric perspective:
      There is evidence of a long-standing psychiatric condition

28   characterized by symptoms of anxiety and depression of fluctuating

severity, in response to various stressor.  There is evidence of
significant but temporary exacerbation of her symptoms in
response to progressively worsening conflict with her supervisors .
. . . significant workplace related stressors are identified as primary
causal factors in the claimant's acute exacerbation.

* * * *

However, for the timeframe in question while under appropriate
care with regular psychotropic  management with a predominantly
stable low dose regimen, and regular psychotherapy the claimant
has been persistently stable and progressively improving. . . ."

21.     Unum did not provide its medical records review reports from Dr. Norris or Dr.

Brown or it vocational report from Ms. Marsiano to Jones or her counsel for review and

comment before issuing its final decision on Jones's appeal, although it had the opportunity and

sufficient time to do so.

22     By letter dated June 4, 2019, Unum denied Jones's appeal and notified her that

she had exhausted her administrative remedies.

23.     Plaintiff complied with all terms and conditions of The Policy and was and at all

relevant times has been totally disabled under the terms of

The Policy.

24.     Unum was required to provide Plaintiff a full and fair review of her claim for

benefits pursuant to 29 U.S.C.  §1133 and its implementing Regulations.  Specifically:

A.     29 U.S.C. §1133 mandates that, in accordance with the Regulations of the
Secretary of Labor, every employee benefit plan, including defendants
herein, shall provide adequate notice in writing to any participant or
beneficiary whose claim for benefits under the plan has been denied,
setting forth the specific reasons for such denial, written in a manner
calculated to be understood by the participant and afforded a reasonable
opportunity to any participant whose claim for benefits has been denied a
full and fair review by an appropriate named fiduciary of the decision
denying the claim.

B.     The Secretary of Labor has adopted Regulations to implement the
requirements of 29 U.S.C. §1133.  These Regulations are set forth in 29

C.F.R. §2560.503-1 and provide, as relevant here, that employee benefit plans, including United of Omaha, shall establish and maintain reasonable procedures governing the filing of benefit claims, notifications of benefit determinations, and appeal of adverse benefit determinations and that such procedures shall be deemed reasonable only if:

i.  Such procedures comply with the specifications of the Regulations.

ii.  The claims procedures contain administrative processes and safeguards designed to ensure and to verify that benefit determinations are made in accordance with governing plan documents and that, where appropriate, The Policy provisions have been applied consistently with respect to similarly situated claimants.

iii.  Written notice is given regarding an adverse determination (i.e., denial or termination of benefits) which includes: the specific reason or reasons for the adverse determination; with reference to the specific plan provisions on which the determination is based; a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; a description of The Policy's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of ERISA following a denial on review; if an internal rule, guideline, protocol, or similar criterion was relied upon in making the adverse determination, either the specific rule, guideline, protocol, or other similar criterion or a statement that such a rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination and that a copy of such rule, guideline, protocol, or other criterion will

1   be provided free of charge to the claimant upon request.

2   iv.   Unum is required to provide a full and fair review of any adverse

3   determination which includes:

4   a.   That a claimant shall be provided, upon request and free of

5   charge, reasonable access to, and copies of, all documents,

6   records, and other information relevant to the claimant's

7   claim for benefits.

8   b.   A document, record, or other information shall be

9   considered "relevant" to a claimant's claim if such

10   document, record, or other information: (1) was relied upon

11   in making the benefit determination; (2) was submitted,

12   considered, or generated in the course of making the benefit

13   determination, without regard to whether such document,

14   record, or other information was relied upon in making the

15   benefit determination; (3) demonstrates compliance with

16   the administrative processes and safeguards required

17   pursuant to the Regulations in making the benefit

18   determination; or (4) constitutes a statement of policy or

19   guidance with respect to The Policy concerning the denied

20   benefit without regard to whether such statement was relied

21   upon in making the benefit determination.

22   c.   The Regulations further provide that for a review that takes

23   into account all comments, documents, records and other

24   information submitted by the claimant relating to the claim,

25   without regard to whether such information was submitted

26   or considered in the initial benefit determination;

27   d.   The Regulations further provide that, in deciding an appeal

28   of any adverse determination that is based in whole or in

1    part on a medical judgment that the appropriate named

2    fiduciary shall consult with a healthcare professional who

3    has appropriate training and experience in the field of

4    medicine involved in the medical judgment.

5    e.    The Regulations further require a review that does not

6    afford deference to the initial adverse benefit determination

7    and that is conducted by an appropriate named fiduciary of

8    the Plan who is neither the individual who made the

9    adverse benefit determination that is the subject of the

10   appeal nor the subordinate of such individual.

11   f.    The Regulations further provide that a healthcare

12   professional engaged for the purposes of a consultation for

13   an appeal of an adverse determination shall be an individual

14   who is neither the individual who was consulted in

15   connection with the adverse benefit determination which

16   was the subject of the appeal nor the subordinate of any

17   such individual.

18   g.    Effective April 1, 2018, The United States Department of

19   Labor amended ERISA claims procedures for disability

20   benefits.  The amendment ensures that, "Disability

21   claimants receive a clear explanation of why their claim

22   was denied as well as their rights to appeal a denial of a

23   benefit claim, and to review and respond to new

24   information developed by the plan during the course of the

25   appeal."  29 C.F.R. §2560.501 - Claims procedure,

26   currently states at subsection (h)(4):

27   (4)  Plans providing disability benefits.  The claims

28   procedures of a plan providing disability benefits will

1    not, with respect to claims for such benefits, be

2    deemed to provide a claimant with a reasonable

3    opportunity for a full and fair review of a claim and

4    adverse benefit determination unless, in addition to

5    complying with the requirements of paragraphs

6    (h)(2)(ii) through (iv) and (h)(3)(i) through (v) of this

7    section, the claims procedures -

8

9    (i) Provide that before the plan can issue an adverse

10    benefit determination on review on a disability benefit

11    claim, the plan administrator shall provide the

12    claimant, free of charge, with any new or additional

13    evidence considered, relied upon, or generated by the

14    plan, insurer, or other person making the benefit

15    determination (or at the direction of the plan, insurer

16    or such other person) in connection with the claim;

17    such evidence must be provided as soon as possible

18    and sufficiently in advance of the date on which the

19    notice of adverse benefit determination on review is

20    required to be provided under paragraph (i) of this

21    section to give the claimant a reasonable opportunity

22    to respond prior to that date.

23    25.    Unum denied Plaintiff a full and fair review of her claim for benefits as follows:

24    A.    Unum does not have claims procedures which contain administrative

25    processes and safeguards designed to ensure and to verify that benefit

26    determinations are made in accordance with governing plan documents

27    and that, where appropriate, the policy provisions have been applied

28    consistently with respect to similarly situated claimants or did not follow

1    them with respect to Jones' claim.

2    B.    Unum, when terminating Plaintiff's claim for LTD benefits, did not

3          provide a description of the additional material or information necessary

4          for Plaintiff to perfect her claim or an explanation of why such material or

5          information was necessary.  Specifically, in its December 26, 2018,

6          termination of benefits letter, Unum did not explain what additional

7          information Jones should submit to Unum and why in order to support her

8          claim for disability benefits.

9    C.    Unum did not consider the comments and documents submitted in support

10         of Plaintiff's appeal of the termination: most of the arguments presented in

11         her appeal and supplemental materials and not addressed by Unum.

12    D.    Unum did not provide to Jones all relevant records and materials in its

13          possession regarding Jones' claim.  Specifically, and without limitation,

14          Jones requested and Unum refused to provide relevant documents as

15          follows:

16          1.    By letter dated January 7, 2019, Plaintiff, through counsel

17                requested her entire claim file from Unum.

18          2.    Plaintiff's counsel April 3, 2019, appeal letter asserted that Unum

19                withheld relevant documents including attorney-client advice.

20          3.    By letter dated  April 18, 2019, letter asserted that "Unum is not

21                obligated to provide you with attorney-client privilege

22                communications".

23          4.    By letter dated April 25, 2019, Plaintiff's counsel and explained

24                that Unum was required to provide attorney-client

25                communications.

26          5.    By letter dated April 29, 2019, Unum disagreed.

27          6.    By letter dated May 15, 2019, Plaintiff's counsel provided more

28                authority for the proposition that Unum was required to provide

1    attorney-client communications.

2        7.    By letter dated May 22, 2019, Unum asserted that it was not

3              required to disclose attorney-client privileged communications and

4              also that there are no attorney-client privilege communications in

5              the claim file prior to January 14, 2019, when a copy of the file

6              was provided to you."

7        E.    Unum knowingly and deliberately failed to comply with the April 1, 2018,

8              Regulations amendment regarding Jones' claim.  Plaintiff is informed and

9              believes, and thereon alleges that Unum's claims and appeal employees

10             are aware of its obligation to provide post-appeal medical and vocational

11             reports to claimants and/or their counsel before making a final decision on

12             an appeal, but knowingly and deliberately did not do so in order to prevent

13             Plaintiff, through counsel, from analyzing and critically commenting upon

14             flaws, errors, misstatements, and erroneous conclusions and reasoning in

15             such post-appeal reports, as she, through counsel, had done with reference

16             to Unum's initial decision, as is more fully alleged in paragraphs 12, 18,

17             and 19 herein.

18       F.    Unum otherwise violated the Regulations and thereby denied Jones a full

19             and fair review of her claim for benefits.

20    26.    Had Unum provided Jones and her counsel the medical reports of Drs. Norris and

21    Brown and the vocational analysis of Ms. Marsiano, as it was required to do, before issuing its

22    final appeal decision, Jones, through counsel, would have responded and noted the errors,

23    inconsistencies, inadequacies, and questionable features of those reports, including, but not

24    limited to:

25       A.    Ms. Marsiano's April 23, 2019, "Vocational Analysis" misconstrues The

26             Policy and thus is erroneous and is factually erroneous.  Factually, Ms.

27             Marsiano was "unclear" as to what duties would require Jones to travel.  If

28             given the opportunity, as required, to respond to Ms. Marsiano's

1           "Vocational Analysis" Jones would have told Unum that Oroville Hospital
2           has it primary facility at 2767 Olive Highway, Oroville, California, (as the
3           Policy and its records show) and other facilities at which she worked at
4           2809 Olive Ashway, 2721 Olive Highway, 900 Oroville Fam Boulevard E,
5           2450 Oroville Dam Boulevard E, and 5100, 100 Executive Parkway, all in
6           Oroville, California.  Jones would have also told Unum that her work at
7           those other facilities required that she bring and carry materials weighing
8           more than and up to 20 pounds. Thus, factually, Jones' "own occupation"
9           was a "light duty" not a "sedentary" job.

10   B.   Jones would have also explained, as alleged in Paragraphs 8, 10, 11, and
11           12 of the Complaint, that Ms. Marsiano misinterpreted and misapplied The
12           Policy, with its circular definitions and thus ambiguous terms.

13   C.   Jones would have informed Unum that since Dr. Norris concluded Jones
14           could ONLY perform sedentary level level activity/work/occupational
15           activities and since Jones's own occupation required the capacity to do
16           light duty work, Dr. Norris's "OSP Review" dated May 2, 2019,
17           corroborated Jones' disability and supported her claim for continuing LTD
18           benefits.

19   D.   Jones would have responded to Dr. Brown's May 21, 2019, "OSP
20           Review," in part, by explaining her condition in the "timeframe in
21           question" had been "persistently stable and progressively improving"
22           <u>because</u> she was not working and thus was not constantly subjected to
23           circumstances which caused certain of her disabling symptoms.  If she had
24           been working or returned to work, she would be constantly subjected to
25           such circumstances to her detriment and that therefore reasonable care and
26           prudence precluded her from working at her own occupation and she was
27           unable to perform the <u>substantial and material acts</u> of <u>usual occupation</u> in
28           the usual and customary way.

27.     This Court is required to review the termination of Plaintiff's benefits de novo because: (1) The Policy does not reserve discretion; and (2): although the summary plan discretion does purport to reserve discretion to Unum it void and unenforceable due to California Insurance Code section 10110.6 because The Policy/SPD:

       i.    provides life insurance or disability insurance coverage, to any California resident;

      ii.    was amended and renewal issued after the effective date of Insurance Code section 10110.6 of January 1, 2012.

28.     Alternatively, if for any reason the Court concludes that review is for abuse of discretion, then this Court should review United of Omaha's decision with limited deference because:

      A.    Unum is both the administrator and the funding source for The Policy, and therefore has a conflict of interest.

      B.    Unum failed to comply with ERISA's procedural requirements regarding benefit claims procedures and full and fair review of benefit claim denials.

      C.    Unum utilized medical experts to review Plaintiff's medical records who had a financial conflict of interest, and therefore did not provide a neutral, independent review process.

      D.    Unum refused to consider all evidence presented by Plaintiff in the course of her appeal.

      E.    Unum's decision-making was influenced by its financial conflict of interest.

      G.    Unum relied upon  factually unsubstantiated medical reviews that were provided by Unum's hired physicians.

29.     Unum's termination of Plaintiff's LTD  benefits was arbitrary and capricious, an abuse of discretion, and a violation of the terms of The Policy.

30.     An actual controversy has arisen and now exists between Plaintiff and Unum with respect to whether Plaintiff is entitled to LTD benefits under The Policy.

31. Plaintiff contends, and Unum disputes, that Plaintiff is entitled to LTD benefits under the terms of The Policy because Plaintiff contends, and Unum disputes, that Plaintiff is totally disabled.

32. Plaintiff desires a judicial determination of her rights and a declaration as to which party's contention is correct, together with a declaration that Unum is obligated to pay LTD benefits under the terms of The Policy, retroactive to the first day she was entitled to such benefits, i.e., December 27, 2018, until and unless such time that Plaintiff is no longer eligible for such benefits under the terms of The Policy, i.e., until Plaintiff reaches the age of 65.

33. A judicial determination of these issues is necessary and appropriate at this time under the circumstances described herein in order that the parties may ascertain their respective rights and duties, avoid a multiplicity of actions between the parties and their privities, and promote judicial efficiency.

34. As a proximate result of Unum's wrongful conduct as alleged herein, Plaintiff was required to obtain the services of counsel to obtain the benefits to which she is entitled under the terms of The Policy.  Pursuant to 29 U.S.C. section 1132(g)(1), Plaintiff requests an award of attorney's fees and expenses as compensation for costs and legal fees incurred to pursue Plaintiff's rights.

WHEREFORE, Plaintiff prays judgment as follows:

1. For declaratory judgment against Unum, requiring it to pay long-term disability benefits under the terms of The Policy to Plaintiff from the date of termination of said benefits to the date of judgment and thereafter, with prejudgment interest on all unpaid benefits, until and unless it is thereafter determined that Plaintiff is no longer eligible for benefits under the terms of The Policy.

2. For an order, pursuant to 29 U.S.C. 1132(a)(3), striking from the record and disregarding: (a) Ms. Marsiano's April 23, 2019, "Vocational Analysis; (b) Dr. Norris's May 2, 2019, "OSP Review," and (c) Dr. Brown's May 21, 2019, "OSP Review" because Unum violated the April 1, 2018, Regulations by failing to provide these documents to Jones for comment before rendering its final appeal decision, and for an order that Liberty pay back benefits, with

1  interest, fees, and court costs, and to continue to pay benefits until and unless it provides Jones

2  with a full and fair review of her claim, in full compliance with the Regulations, unless after that

3  full and fair review Unum determines Jones is no longer entitled to such benefits; or providing

4  other appropriate relief for Unum's actions.

5         3.      For attorney's fees pursuant to statute against Unum.

6         4.      For costs of suit incurred.

7         5.      For such other and further relief as the Court deems just and proper.

8

9  Date:  July 2, 2019                  */s/ Raquel M. Busani*

10                                      RAQUEL M. BUSANI

11                                      Attorney for Plaintiff,
                                    DEBORAH JONES

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28